UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
────────────────────────────────────────────

ESTEVAN CAMACHO,
                                        Petitioner,

        vs.
                                                          9:03-CV-1246
JOSEPH T. SMITH,                                          (J. Kahn)
Superintendent of Shawangunk Correctional Facility
                                        Respondent.
────────────────────────────────────────────

ESTEVAN CAMACHO, Petitioner *Pro Se*
GERALD J. ROCK, Assistant Attorney General of the State of New York

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

Petitioner brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a judgment of conviction from the Schenectady County Court. Petitioner was convicted after a jury trial of murder, second degree, and assault, first degree on July 6, 2000. On August 22, 2000, petitioner was sentenced to a determinate sentence of twenty-five years for the assault conviction, to run concurrently with an indeterminate term of twenty-five years to life for the murder conviction. The Appellate Division affirmed the conviction on April 18, 2002. *People v. Camacho*, 293 A.D.2d 876, 742 N.Y.S.2d 402 (3d Dept. 2002). The New

York Court of Appeals denied leave to appeal on September 3, 2002. *People v. Camacho*, 98 N.Y.2d 729, 779 N.E.2d 190 (2002).

In March 2003, petitioner applied for a writ of error coram nobis on the basis of ineffective assistance of appellate counsel. The Third Department denied the application.[1] *People v. Camacho*, *Order*, Appellate Division, Third Department, April 25, 2003.[2] The Court of Appeals denied leave to appeal on August 13, 2003. *People v. Camacho*, 100 N.Y.2d 593, 798 N.E.2d 352 (2003).

Petitioner raises two grounds in support of his petition.

1. The conviction was obtained by an unconstitutional search and seizure.

2. Petitioner was denied effective assistance of appellate counsel.

Respondent has filed an answer with a memorandum of law (Dkt. No. 7), and the pertinent state court records.[3] For the following reasons, this court will recommend denial of the petition.

---

[1] Petitioner apparently filed a motion for reconsideration of the Third Department's denial of his application for a writ of error coram nobis. None of the papers related to the motion for reconsideration were included in the state court records submitted by respondent. The Appellate Division denied petitioner's motion on July 1, 2003. *People v. Camacho*, *Order*, Appellate Division, Third Department, July 1, 2003.

[2] Respondent did not include in the state court records the Appellate Division's or the Court of Appeals's decisions related to petitioner's application for a writ of error coram nobis. Because the Appellate Division's decisions were unpublished, they were obtained by the court via facsimile from the clerk's office of the Third Department.

[3] The state court records are listed on page 2 of respondent's Answer. (Dkt. No. 7).

## DISCUSSION

**1.     Facts**

On September 18, 1999, Harvey Pantoia was fatally stabbed outside of Baller's Platinum Club in Schenectady, New York.  Investigators Robert Glasser and Robert Buchanan were the lead detectives assigned to the homicide.  (*Huntley/Wade/ Dunaway/Payton* Hearing Transcript[4] ("H./W. T.") 2/28/00, 47; H./W. T. 5/26/00, 46).   During the course of the investigation, eyewitnesses told police that the assailant left the scene in a red vehicle.  (H./W. T. 2/28/00, 81, 122).  Eyewitnesses also identified petitioner as the assailant from photo arrays.  (H./W. T. 2/28/00, 26, 31, 99; 3/15/00, 124).

Police officers sought to identify the red vehicle that was seen leaving the scene shortly after the stabbing.  (H./W. T. 2/28/00, 11).  A motor vehicle check revealed that the car was a red Ford Tempo registered to Jennifer McCall,[5] but when they tried to locate her, investigators found that she had moved from the address listed on the registration.  (H./W. T. 2/28/00, 11-13).  The remaining residents at the address were relatives of Jennifer McCall.  The relatives told investigators that

---

[4]Schenectady County Court conducted consolidated *Huntley*, *Wade*, *Dunaway*, and *Payton* hearings over the course of nine different days, from February until May 2000.  The transcript volumes are separated according to the day the testimony was given.  Transcripts from 2/28/00 and 3/15/00 are contained in the same volume.

[5]Jennifer McCall is also referred to as Jennifer Camacho in the state court records.  Because she had the last name McCall in the time period under consideration, this court will refer to her as Jennifer McCall.

3

McCall was living on Bradford Street. *Id*. at 13-15. On September 22, 1999, investigators found the vehicle parked on Bradford Street in Albany, and began knocking on doors to try to locate the owner. *Id*. at 14, 75. At first, they were unsuccessful. *Id*. at 51. Investigators Glasser and Buchanan visited Bradford Street later the same day, found the car parked on the street, and knocked on the door of the closest building. *Id*. Jennifer McCall answered the door, and identified herself to the officers. *Id*. at 51-52. Investigator Glasser then asked her if she knew where petitioner was, and she stated that he was in her residence. *Id*. at 52.

Petitioner's account of what happened next differs from the police testimony, and from the factual findings made by Schenectady County Court after the *Wade/Huntley/Dunaway/Payton* hearing. Petitioner claimed that police forced their way into the residence, found petitioner in a bedroom, handcuffed him, and then transported him to the police station. (Dkt. No. 3, 1). The investigators stated that they followed Jennifer McCall up the stairs, found petitioner in a bed, woke him up, allowed him to dress, and then handcuffed him. (H./W. T. 2/28/00, 53-54).

On September 22, 1999, petitioner was questioned at the police station. (H./W. T. 2/28/00, 55; 5/26/00, 51-55). Again, petitioner's version of what happened during that interview is very different from the police account, and from the factual findings made by Schenectady County Court. Petitioner claims that he requested an attorney repeatedly, and that his girlfriend heard his requests through

the air ducts that connected the interview rooms.  (Dkt. No. 3, 1-2).  Investigators Glasser and Buchanan stated that petitioner did *not* request an attorney *at any time*, that he was advised of his rights, that he was offered food and drink, and was allowed to use the restroom.  (H./W. T. 2/28/00, 55-67; 5/26/00, 51-55).  The interview lasted approximately two hours.  (H./W. T. 2/28/00, 64).

On November 22, 1999, petitioner was indicted on two counts of second degree murder, and one count of assault in the second degree.  *People v. Camacho, Indictment* (Record on Appeal[6] ("R.A.") at 1).  In January 2000, petitioner's counsel filed several motions including:  a motion to dismiss the indictment on the basis of insufficiency of the evidence, a motion to exclude certain evidence regarding previous convictions and prior bad acts, a motion to exclude evidence regarding the identification of petitioner, and a motion to exclude petitioner's statement obtained by the police.  *People v. Camacho, Motion* (included as Exhibit A in the State Court Record volume ("S.C.R.") at 60-66).  Schenectady County Court conducted a consolidated *Huntley*[7], *Wade*[8], *Dunaway*[9], and *Payton*[10] hearing.  The hearing took

---

[6]The "Record on Appeal" was submitted with a brief by the Schenectady County District Attorney's Office to the Third Department in response to petitioner's direct appeal.

[7]*People v. Huntley*, 15 N.Y.2d 72, 204 N.E.2d 179 (1965).

[8]*United States v. Wade*, 388 U.S. 218 (1967).

[9]*Dunaway v. New York*, 442 U.S. 200 (1979).

[10]*Payton v. New York*, 445 U.S. 573 (1980).

place on nine non-consecutive days between February and May 2000.

In June 2000, the Schenectady County Court Judge issued a decision finding that petitioner was "arrested by police after they were invited into his girlfriend's home, upon probable cause supported by eyewitness information." (S.C.R. 25). The motion to suppress petitioner's statements to police was denied. *Id.* The court also found that petitioner "was properly advised of his Fifth and Sixth Amendment rights and not denied access to counsel," and that the identification procedures were "neither suggestive nor improper in any way." *Id*. at 26.

A jury trial was held in June and July 2000. On July 6, 2000, petitioner was convicted of assault in the first degree, and murder in the second degree. (R.A. 193). Prior to sentencing, petitioner's trial counsel filed a motion to set aside the verdict pursuant to N.Y. CRIM. PROC. LAW §§ 330.30 and 330.40 on the basis of juror misconduct. (R.A. 195-97). On August 22, 2000, the Schenectady County Court denied the motion without a hearing, and sentenced petitioner to a determinate term of twenty-five years on the assault charge, running concurrently with an indeterminate sentence of twenty-five years to life on the murder charge. (R.A. 193).

Petitioner was represented by counsel on appeal. In the Third Department, appellate counsel argued two points in favor of reversing petitioner's conviction, both based on the conduct of jurors during deliberations. (Appellant's Brief, Volume I, 2). Petitioner's appeal was based on the arguments made by trial counsel in the

motion to set aside the verdict.  The Appellate Division found that the alleged juror misconduct was not "the result of any external or improper influence," and that nothing in the record suggested that the court or court officers "neglected to oversee the jury during its deliberations."  *People v. Camacho*, 293 A.D.2 876, 876 (2002).  The Court of Appeals denied petitioner's application for leave to appeal without opinion.  *People v. Camacho*, 98 N.Y.2d 729, 779 N.E.2d 190 (2002).

Petitioner applied for a writ of error coram nobis in March 2003 based upon alleged ineffective assistance of appellate counsel.  (S.C.R. 37-49).  Petitioner claimed that the two issues that appellate counsel raised were meritless and "lacking any foundation in the trial record."  *Id*. at 39.  He also claimed that there were "two possible meritorious issues" related to his "warrantless arrest and illegal interrogation" that could have resulted in the reversal of his convictions.  *Id*. at 39-40.  The Appellate Division denied petitioner's application in April 2003.  *People v. Camacho*, Decision and Order, April 25, 2003.[11]  Petitioner made a motion for reconsideration by the Third Department, which was denied in July 2003.[12]  *People v. Camacho*, Decision and Order, July 1, 2003.  Petitioner's motion for leave to appeal to the New York Court of Appeals was denied in August 2003.  *People v. Camacho*,

---

[11]This is an unpublished order that this court obtained via facsimile from the clerk's office of the Appellate Division, Third Department.

[12]The court was not provided with the papers related to petitioner's motion for reconsideration, and was unable to obtain them.  The court was able to obtain the Third Department's Decision and Order directly from its clerk's office via facsimile.

100 N.Y.2d 593, 798 N.E.2d 352 (2003).

## 2. **Fourth Amendment Claim**

It has been well-settled since *Stone v. Powell* that where the state affords a defendant "an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced . . . [against him]." *Stone v. Powell*, 428 U.S. 465, 482 (1976).

Fourth Amendment claims in habeas petitions are reviewed only under certain circumstances: "(a) if the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citing *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977)). "[T]he 'federal courts have approved New York's procedure for litigating Fourth Amendment claims . . . as being facially adequate." *Capellan*, 975 F.2d at 70, n. 1 (quoting *Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1989) (citing *Gates v. Henderson*, 568 F.2d 830, 837 & n.4 (2d Cir. 1977) and *Shaw v. Scully*, 654 F. Supp. 859, 864 (S.D.N.Y. 1987))).

Petitioner's first claim is that police officers entered Jennifer McCall's

residence without her consent, and conducted an illegal search and seizure. (Dkt. No. 3, 8). Petitioner argues that because the police did not have a warrant, and because they did not have Jennifer McCall's permission to enter her residence, petitioner was illegally arrested. *Id*. at 8-10. Petitioner availed himself of New York's procedure for the suppression of evidence. Before his trial, petitioner moved to suppress a variety of evidence, including statements made by petitioner to police after his arrest at Jennifer McCall's residence. A *Huntley* hearing was held. After vigorous direct and cross-examination, and briefing from the defense, the court found that police had permission from Jennifer McCall to enter her residence. (S.C.R. 25). Petitioner's trial counsel had an opportunity at trial to cross-examine the officers. Petitioner does not, nor can he allege any "unconscionable breakdown" in the state's procedures, except to say that the issue was decided incorrectly. Petitioner litigated the Fourth Amendment issue during his prosecution by the state. To the extent that petitioner claims a violation of his Fourth Amendment rights, petitioner's claim may be dismissed based on *Stone v. Powell*.[13]

3. **Scope of Review**

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), claims

---

[13] This court was not provided with a trial transcript by respondent's attorney, but in an affidavit for the coram nobis matter, an Assistant District Attorney for Schenectady County stated that "the People did not offer any evidence of defendant's statements to police officers." (S.C.R. 53). Excerpts of the trial were provided to this court in the papers submitted to the Appellate Division, Third Department.

9

adjudicated on the merits in state court will stand

> unless the adjudication . . . (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254 (d) (2007). The Second Circuit describes this as a deferential review, and states that

> the necessary predicate to this deferential review is, of course, that petitioner's federal claim has been adjudicated on the merits by the state court. If a state court has not adjudicated the claim on the merits, we apply the pre-AEDPA standards, and review *de novo* the state court disposition of the petitioner's federal constitutional claims.

*Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir. 2001).

"[A] state court adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Norde v. Keane*, 294 F.3d 401, 410 (2d Cir. 2002) (internal citations omitted). In order to determine whether a state court has disposed of a claim on the merits, the following factors are considered: "(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits." *Aparicio*, 269 F.3d at 93 (quoting *Sellan v. Kuhlman*,

261 F.3d 303, 314 (2d Cir. 2001)).

A state decision is "contrary to clearly established Federal law if it 'contradicts the governing law' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from the Supreme Court." *Ramirez v. Miller*, 2005 U.S. Dist. LEXIS 4306, *10 (S.D.N.Y. March 11, 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). The "contrary to" standard requires not just an incorrect application of the law, but an *unreasonable* application. *Id*. "Objective unreasonableness includes an unreasonable refusal 'to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed." *Id*. (quoting *Kennaugh v. Miller*, 289 F.3d 36, 45 & n.2 (2d Cir. 2002)).

Pursuant to 28 U.S.C. § 2254 (e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. 2254 (e)(1) (2007). *See Sorto v. Herbert*, 364 F. Supp. 2d 240, 248-49 (E.D.N.Y. 2004). The Supreme Court held that "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 127 S. Ct. 1933, 1939 (2007).

11

**4.**     <u>**Ineffective Assistance of Appellate Counsel**</u>

The Supreme Court standard for determining whether a petitioner's attorney was ineffective is articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a two-part test: (1) petitioner must show that "counsel's performance was deficient. . . . that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) petitioner "must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.

"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 687-88. To explain the objective standard of reasonableness, the Second Circuit has held that

> [a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. To merit habeas relief, the defendant must show that the deficient performance prejudiced the defense. The level of prejudice the defendant need demonstrate lies between prejudice that had some conceivable effect and prejudice that more likely than not altered the outcome in the case. Thus the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The Court defined reasonable probability as one that undermines confidence in the outcome.

*Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (alterations in original, internal quotation marks and citations omitted), *quoted in Lynn v. Bliden*, 443 F.3d 238, 247

(2d Cir. 2006).  In applying this test, a reviewing court must be "highly deferential" and presume that counsel's conduct falls within the range of reasonable performance. *Strickland*, 466 U.S. at 689.

The Due Process clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  Claims of ineffectiveness of appellate counsel are governed by the *Strickland* test as well.  *Clark v. Stinson*, 215 F.3d 237, 241 (2d Cir. 2000); *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).  The law is clear that when preparing an appeal, an attorney is not required to raise every non-frivolous argument even if asked to do so by his client.  *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).  In *Jones*, the Court stated that "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones*, 463 U.S. at 751-52.

The Supreme Court has also held that where a petitioner's ineffective assistance claim is based on counsel's failure to litigate Fourth Amendment issues, he must also show "that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).  *See also Mosby v. Senkowski*, 470 F.3d 515 (2d Cir. 2006) and *Laaman v. United States*, 973

F.2d 107, 113 (2d Cir. 1992).

Petitioner's second claim is that he was denied effective assistance of appellate counsel. (Dkt. No. 1, 5, ¶ 12(A)). He argues that appellate counsel raised issues with no basis in the record, and ignored more meritorious claims related to his arrest and interrogation. (Dkt. No. 3, 12). Petitioner states that he "urged . . . [counsel] to pursue such colorable claims." *Id*.

Though neither the Appellate Division nor the Court of Appeals issued a written opinion when they denied petitioner's application for a writ of error coram nobis, they evaluated the merits of petitioner's claim in reaching a denial. Based on the denial, New York's appellate courts agreed that had appellate counsel raised other issues on appeal, the outcome would not have been favorable for petitioner.

In deciding what issues to appeal, appellate counsel considered a record including lengthy pre-trial hearings as well as the evidence introduced at trial. Trial counsel's lack of success litigating the arrest and interrogation issues, ***and*** the prosecutor's eventual decision ***not*** to introduce evidence obtained as a result of petitioner's arrest and interrogation at trial,[14] suggest that these issues were not appropriate for appeal. The court does not find a reasonable probability that the result of petitioner's appeal would have been different if issues related to petitioner's

---

[14]Petitioner has not identified any evidence introduced at trial that was obtained from the search or the arrest. The court relies on the statement by the Schenectady County District Attorney's Office that no evidence derived from petitioner's statements to police was introduced at trial. (S.C.R. 53).

14

arrest and interrogation had been raised on direct appeal. The court finds that appellate counsel's conduct was not deficient.

Because no evidence related to petitioner's arrest and interrogation was introduced at trial, petitioner is not able to meet the *Kimmelman* requirement. The Appellate Division did not act contrary to or unreasonably apply *Strickland* when it denied petitioner's coram nobis application. To the extent that petitioner's ineffective assistance of appellate counsel claim is based on a failure to appeal issues related to petitioner's arrest and interrogation, the claim may be dismissed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 5, 2007

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge